**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JASON A. SZAKAL,** | : | **Case No. 2:25-cv-1448** |
| **Plaintiff,** | : | |
| vs. | : | **District Judge Algenon L. Marbley** <br> **Magistrate Judge S. Courter M. Shimeall** |
| **STATE OF OHIO, *et al.*,** | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATIONS

Plaintiff, a state prisoner at the Noble Correctional Institution,[1] filed a *pro se* civil rights Complaint pursuant to 42 U.S.C. § 1983 that was removed to this Court. (ECF No. 1). In its Order granting Plaintiff *in forma pauperis* status, the Court directed Plaintiff to file an amended complaint that complies with the federal and local rules of civil procedure. (ECF No. 12). Plaintiff timely filed his Amended Complaint, which is now the operative Complaint, on May 14, 2026. (ECF No. 13). He raises allegations against local judicial, prosecutorial, public defender, and law enforcement officials in connection with convictions, as well as other pending cases and charges, in the Washington County Court of Common Pleas.

This matter is now before the Court for a *sua sponte* review of Plaintiff's Complaint to determine whether the Complaint, or any portion of it, should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary

[1] Plaintiff was detained at the Washington County Jail when he filed his Complaint. He was recently transferred to the Noble Correctional Institution. https://appgateway.drc.ohio.gov/OffenderSearch/Search/Details/A859859. This Court may take judicial notice of court records that are available online to members of the public. *See Lynch v. Leis*, 382 F.3d

relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B). Also before the Court is Plaintiff's Motion to Dismiss. (ECF No. 10). Having performed the initial screen and reviewed Plaintiff's motion, the Undersigned concludes that Plaintiff's Motion to Dismiss should **be DENIED** and that his Complaint should **be DISMISSED**.

## I. Screening Legal Standard

In enacting the original *in forma pauperis* statute, Congress recognized that a "litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992) (citing *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). To prevent such abusive litigation, Congress has authorized federal courts to dismiss an *in forma pauperis* complaint if they are satisfied that the action is frivolous or malicious. *Id.*; *see also* 28 U.S.C. § 1915(e)(2)(B)(i). A complaint may be dismissed as frivolous when the plaintiff cannot make any claim with a rational or arguable basis in fact or law. *Neitzke*, 490 U.S. at 328–29; *see also Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990). An action has no arguable legal basis when the defendant is immune from suit or when the plaintiff claims a violation of a legal interest which clearly does not exist. *Neitzke*, 490 U.S. at 327. And an action has no arguable factual basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible." *Denton*, 504 U.S. at 32; *Lawler*, 898 F.2d at 1199. The Court need not accept as true factual allegations that are "fantastic or delusional" in reviewing a complaint for frivolousness. *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (citing *Neitzke*, 490 U.S. at 328).

Congress also has authorized the *sua sponte* dismissal of complaints that fail to state a

---

642, 647 n.5 (6th Cir. 2004) (citing *Lyons v. Stovall*, 188 F.3d 327, 332 n.3 (6th Cir. 1999)).

claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii). A complaint filed by a *pro se* plaintiff must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Even still, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Hill*, 630 F.3d at 470–71 ("[D]ismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim [under §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)].").

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Court must accept all well-pleaded factual allegations as true but need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Although a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93 (citations omitted).

## II. Allegations and Parties

Plaintiff brings this action in connection with recent state-court convictions and other

cases in the Washington County Court of Common Pleas. Throughout his Complaint, Plaintiff references five different felony criminal case numbers, one domestic relations case number, and a case involving violations of a protective order.[2] Review of publicly available on-line judicial records reveals that Plaintiff was convicted of felony criminal charges in three different case numbers and was sentenced to prison on August 17, 2026.[3] In addition to the State of Ohio, Plaintiff names the following Washington County individuals as defendants: Prosecuting Attorney Joseph P. Derkin; Assistant Prosecuting Attorney Kelsey Riffle; Assistant Prosecuting Attorney Nicole Coil; Common Pleas Judge Mark Kerenyi; Ashley Wallace of the Sheriff's Department; C.L. Pugh of the Sheriff's Department; D.S. Gerber of the Sheriff's Department; Lt. Timberman of the Sheriff's Department/County Jail; Sgt. Samantha Jane Skidmore of the Sheriff's Department/County Jail; Captain Martin of the Sheriff's Department/County Jail; and Allyssa Dolly of the Southeast Ohio Crimes Task Force. Plaintiff appears to claim that Defendants have conspired to fabricate and elevate criminal cases against him and to delay resolution of those cases as he remains incarcerated. Since the date that he filed his Complaint, however, Plaintiff has now been convicted, sentenced to prison, and transferred to the custody of the State of Ohio.

Plaintiff begins by suggesting that his rights to a speedy trial and to represent himself were violated in case numbers 25CR60 (trafficking in drugs), 24CR553 (burglary), and 25CR350 (felonious assault). (ECF No. 13, at 249). Specifically, he alleges that the denial of his

---

[2] The case numbers that Plaintiff references are: 25CR60 (trafficking in drugs); 24CR553 (burglary); 25CR350 (felonious assault); 25CRB1096; 25DC82 (divorce with children); and 24CR100 (aggravated trafficking in drugs).

[3] *See* https://cveaccess.washingtongov.org/eservices/searchresults.page (viewed under Plaintiff's name, Jason Szakal, and case numbers 24CR553, 25CR60, and25CR350).

constitutional right to represent himself on September 23, 2025—the day his trial was scheduled to start—was purposely done to cause further delay in the resolution of his cases. Plaintiff also contends that his court-appointed defense counsel Beau Cross (not named as a Defendant), Assistant Prosecutor Joe Derkin, and Judge Mark Kerenyi conspired to cause further delay when defense counsel Cross, on September 18, 2025, filed motion to withdraw after the case was 19 months old with no resolution, and without notice to Plaintiff or leave from the trial court. The motion to withdraw was granted on September 25, 2025. (ECF No. 13, at 250).

Plaintiff states that, during a third pretrial hearing on October 20, 2025, a jury trial was set for November 19, 2025, in case numbers 25CR60 and 24CR553. But after a hearing on October 28, 2025, an order was issued on October 31, 2025, for an evaluation of Plaintiff's competency to stand trial. He states that the entry ordering the evaluation also removed all scheduled dates pending the trial court's receipt of the examiner's report. Plaintiff contends that this series of events constitutes misconduct by prosecutors to purposely delay resolution of cases 24CR553 and 25CR60. (ECF No. 13, at 251).

Plaintiff further states that after the examiner found Plaintiff competent to stand trial, Plaintiff was transported to the trial court for a competency hearing on November 25, 2025. He states that prosecutors Kelsey Riffle and Joe Derkin appeared for the state. He also states that his wife, who was the victim in one of the cases and had a protective order against Plaintiff, was "placed" in the courtroom, even though there was no reason for her to be there. Plaintiff alleges that Defendant Deputy Gerber left Plaintiff unattended with his wife (presumably in violation of the protective order) and that this was a malicious act by the prosecutors in retaliation for

Plaintiff seeking to proceed *pro se*. (ECF No. 13, at 251-52). Plaintiff explains that a complaint was filed on December 3, 2025, charging that Plaintiff recklessly violated the protective order, (ECF No. 13, at 252), and that he was charged with a misdemeanor based on an affidavit signed by Defendant Sgt. SJ Skidmore #213. Plaintiff adds that another affidavit by Defendant Skidmore, on information provided by Defendants Capt. Martin and Lt. Timberman, accused Plaintiff of another violation of the protective order stemming from a communication with his wife from the jail on November 26, 2025. (ECF No. 13, at 252-53). Plaintiff was represented at that time by Washington County public defender Donald O. Rickert for the misdemeanor charge, case number 25CRB1096. Plaintiff contends that this series of events constitutes a "malicious fishing expedition" by the county sheriff and prosecutors using Plaintiff's wife as "live bait." (ECF No. 13, at 253). Plaintiff states that the case went to trial and that he was found not guilty by 9-person jury. (ECF No. 13, at 254).

Next, Plaintiff segues to his divorce proceedings as those, apparently, have something to do with the burglary case against him. Plaintiff filed for divorce with children and division of property on March 16, 2025, in case number 25DC82. He also references a bank transfer by his wife for a renovations contractor that somehow implicated case number 24CR553, in which Plaintiff was charged with burglary for—he contends—using the restroom at a residence where his wife and son lived. (ECF No. 13, at 254–55). Plaintiff adds, without context, that Defendant Derkin drafted jury instructions with false testimony to obtain a wrongful conviction. (ECF No. 13, at 255). He states that he was found guilty on February 11, 2026, that his bond was revoked, and that he is awaiting sentencing.[4]

[4] As noted throughout this Report and Recommendations, Plaintiff has since been sentenced.

Plaintiff complains that the constant delays in the resolution of his cases were the result of "unquestioned" actions by Defendants Derkin, and Riffle, and Nicole Coil. He accuses them of "rubberstamping" false evidence, as well as fraud, corruption, bad faith, and issuing fraudulent indictments in case numbers 25CR553 and 24CR100. (ECF No. 13, at 256).

Plaintiff turns next to the confiscation of his cell phone. He states that his cell phone was confiscated by Defendant Deputy Sheriff Ashley Wallace on July 25, 2025, following Plaintiff's arrest for felonious assault in case number 25CR350. Plaintiff states that he received discovery in that case on September 2, 2025, and inquired about his phone. He was advised that Defendant Derkin had possession even though—according to Plaintiff—there was no warrant for the phone at that time. Plaintiff states that, on September 4, 2025, Probate Judge Timothy Williams (not named as a Defendant) and Defendant Deputy Sheriff Pugh drafted a warrant for the contents of Plaintiff's phone, to be collected within three days. (ECF No. 13, at 256–57). Believing the warrant to be invalid, Plaintiff states that he sent a letter to prosecutors, which was ignored, and a motion to compel to the public defender's office. (ECF No. 13, at 257). Months later, on January 29, 2026, Plaintiff was advised by Raymond Smith of the public defender's office that Defendant Derkin still had Plaintiff's phone. Plaintiff states that his prison grievances regarding the matter had been ignored. Plaintiff states that when he then reported his phone stolen, Derkin personally returned it to Plaintiff on that same day, January 29, 2026.

Plaintiff's final set of allegations pertain to bond decisions made in his various criminal cases. First, he states that, at an arraignment and bond hearing on case number 24CR100 (aggravated trafficking) on March 1, 2024, Plaintiff was granted, and posted, bond. Three weeks later, case number 24CR100 was dismissed without prejudice and then was re-filed as case number 25CR60 (trafficking) on February 19, 2025. Plaintiff appears to suggest that he was

released on personal recognizance bond at that time. (ECF No. 13, at 257–58).

Plaintiff next states that, when he was arraigned on February 10, 2025, on case number 24CR553 (burglary), Defendant Judge Mark Kerenyi granted bond. (ECF No. 13, at 258). But following a warrantless arrest on July 24, 2025, as well as six felonious charges filed on August 6, 2025, a higher bond was set. Plaintiff contends that he always posted bonds in the past, that he was never a flight risk, that he always appeared and paid his fines, and that he had an established home and children and was small business owner. But now, Plaintiff continues, he has been held without bond since February 12, 2026, due to influence from Defendants Derkin and Riffle, with no dates set for final resolution of the cases against him. (ECF No. 13, at 258-59).

Aside from having the charges against him dismissed, and/or proceeding to trial, and/or being permitted to represent himself, Plaintiff fails to state what relief he seeks. Regardless, Plaintiff has since been convicted, sentenced to prison, and transferred to the custody of the State of Ohio.

## III. Analysis

Plaintiff's Complaint is difficult to read and, at times, it is unclear what type of case he is trying to bring—especially since he fails to articulate what relief he seeks. As far as the Undersigned can decipher, the allegations Plaintiff presumes to raise under 42 U.S.C. § 1983 primarily target various Washington County officials in connection with criminal cases (now convictions) against him. For the reasons explained below, Plaintiff's Complaint is subject to dismissal for failure to state any claims for relief. 28 U.S.C. § 1915(e)(2)(B).

### A. State of Ohio

Plaintiff names the State of Ohio as a Defendant. (ECF No. 13, at 248). "Section 1983 creates liability for 'persons' who deprive others of federal rights under color of law. Only a

'person' faces liability under the statute." *Hohenberg v. Shelby Cnty.*, 68 F.4th 336, 342 (6th Cir. 2023) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989)). The State of Ohio is not a person and therefore is not capable of being sued. *See Thompson v. Branch*, No. 1:24-cv-02, 2024 WL 579756, at *6 (S.D. Ohio Feb. 13, 2024) (citing *Will*, 491 U.S. at 65–66) ("It is well-established that the State of Ohio is not a 'person' subject to suit under § 1983. Therefore, Plaintiffs fails to state a plausible § 1983 claim for relief against the State of Ohio." (cleaned up)), *report and recommendation adopted*, No. 1:24-cv-02, 2024 WL 4278310 (S.D. Ohio Sept. 24, 2024). Thus, the Undersigned **RECOMMENDS** that Plaintiff's claims against the State of Ohio **be DISMISSED with prejudice**.

**B. Judicial and Prosecutorial Immunity**

Plaintiff raises allegations of misconduct against Common Pleas Judge Mark Kerenyi, as well as Washington County Prosecutors Joseph Derkin, Kelsey Riffle, and Nicole Coil. But these named Defendants are immune from Plaintiff's suit.

Construed liberally, Plaintiff alleges that Judge Kerenyi personally acted and conspired to deprive Plaintiff of his rights to a speedy trial and to represent himself. Plaintiff also suggests that Kerenyi made improper decisions about Plaintiff's bond. Defendant Kerenyi is protected by judicial immunity, which shields judges and other public officers "from undue interference with their duties and from potentially disabling threats of liability." *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982). "Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991) (citation omitted). Judicial immunity is overcome only if the actions taken were not in the judge's judicial capacity and if the actions taken were in absence of all jurisdiction. *Id*. at 11–12. Without expressing any opinion as to the veracity of Plaintiff's allegations, Plaintiff has not

plausibly alleged any facts that would show Defendant Kerenyi acted outside the scope of his judicial capacity, or that he acted in the absence of all jurisdiction. Defendant Kerenyi is therefore entitled to judicial immunity and the Undersigned **RECOMMENDS** that Plaintiff's claims against him **be DISMISSED without prejudice**.

Next, Plaintiff alleges that Defendants Derkin, Riffe, and Coil conspired to fabricate and/or elevate criminal cases against Plaintiff, deliberately delayed resolution of these cases, and generally engaged in a pattern of corruption, fraud, and bad faith. Plaintiff also suggests that they played a role in his wife's appearance during a court appearance that resulted in him violating a protective order. Finally, Plaintiff asserts that Derkin somehow utilized not only fabricated testimony in jury instructions to obtain a conviction, but also improperly maintained possession of Plaintiff's cell phone after it was seized during an arrest.

Prosecutors are "absolutely immune from liability" for their actions that are "intimately associated with the judicial phase of the criminal process." *Van de Kamp v. Goldstein*, 555 U.S. 335, 341 (2009) (citation and quotations omitted). "[A]bsolute immunity," however, "may not apply when a prosecutor is not acting as 'an officer of the court,' but is instead engaged in other tasks, say, investigative or administrative tasks." *Id*. at 342 (quoting *Imbler v. Pachtman*, 424 U.S. 409, 431 n.33 (1976)). Again, without expressing any opinion as to the veracity of Plaintiff's allegations, they do not plausibly show Defendants Derkin, Riffle, or Coil were not acting as officers of the court at the time of their alleged misconduct. Defendants Derkin, Riffle, and Coil are thus entitled to prosecutorial immunity and the Undersigned **RECOMMENDS** Plaintiff's claims against them **be DISMISSED without prejudice**.

### C. *Younger* Abstention

Most of Plaintiff's allegations target recent state-court convictions. He alleges that his speedy trial rights and right to defend himself were violated, and that the trial judge, prosecutors, and several deputies (at the behest of prosecutors) engaged in various acts of misconduct intended to deliberately delay Plaintiff's cases or to retaliate against him. But as explained below, because this Court is obligated to abstain from interfering in ongoing state criminal proceedings, Plaintiff fails to state any claims for relief.

Under the doctrine set forth in *Younger v. Harris*, 401 U.S. 37, 44–45 (1971), federal courts "must decline to interfere with," or abstain from, "pending state proceedings involving important state interests unless extraordinary circumstances are present." *Leveye v. Metro. Pub. Def. Off.*, 73 F. App'x 792, 794 (6th Cir. 2003) (citing *Younger*, 401 U.S. at 44–45). The *Younger* abstention doctrine allows "state courts to try state cases free from interference by federal courts, particularly where the party to the federal case may fully litigate his claim before the state court." *Burton v. Fentress Cnty. Jail*, No. 2:15-cv-51, 2015 WL 5672989, at *3 (M.D. Tenn. Sept. 25, 2015) (quoting *Zalman v. Armstrong*, 802 F.2d 199, 205 (6th Cir. 1986)). Abstention under *Younger* is appropriate where "(1) state proceedings are pending; (2) the state proceedings involve an important state interest; and (3) the state proceedings will afford the plaintiff an adequate opportunity to raise his constitutional claims." *Kelm v. Hyatt*, 44 F.3d 415, 419 (6th Cir. 1995) (citation omitted).

Here, Plaintiff's allegations, which target the manner in which his recent state-court convictions were prosecuted, invite the type of interference that *Younger* prohibits. (ECF No. 2, at 28); *Burton*, 2015 WL 5672989, at *2 (*Younger* abstention applies to requests for declaratory and injunctive relief) (citing *Carroll v. City of Mount Clemons*, 139 F.3d 1072, 1074 (6th Cir.

1998)). As to the first factor, the criminal cases against Plaintiff are pending, since he was only recently convicted and his convictions are not yet final on direct review. *See Loch v. Watkins*, 337 F.3d 574, 578 (6th Cir. 2003) (a state court proceeding remains pending until state appellate remedies have been exhausted); *see also Rucker v. Heekin*, No 1:18-cv-05, 2018 WL 348101 , at *5 (S.D. Ohio Jan. 10, 2018) ("Under *Younger*, if litigation remains pending in state court, then this Court must abstain until all appeals have been exhausted absent the existence of extraordinary circumstances, such as a risk of 'great and immediate' irreparable injury, state law that is 'flagrantly and patently violative of express constitutional prohibitions,' or 'bad faith, harassment, or any other unusual circumstance that would call for equitable relief.'" (citations omitted)).[5] With respect to the second factor, an important state interest is at stake, since "state criminal prosecutions have traditionally been considered an arena in which federal courts decline to interfere." *Leveye*, 73 F. App'x at 794 (citing *Younger*, 401 U.S. at 43–45).

Finally, the Court is satisfied that the state courts provide Plaintiff an opportunity to raise any constitutional challenges. First, the Court must "presume that the state courts are able to protect the interests of the federal plaintiff." *Kelm*, 44 F.3d at 420 (citation omitted). The burden is on Plaintiff to show otherwise. *Meyers v. Franklin Cnty. Ct. of Common Pleas*, 23 F. App'x 201, 205 (6th Cir. 2001). Plaintiff raises no allegations suggesting, and the Undersigned is not otherwise persuaded, that he cannot raise his challenges in the state courts on direct appeal or in other collateral actions. *See, e.g., Fieger v. Cox*, 524 F.3d 770, 775-76 (6th Cir. 2008) (noting that federal plaintiffs could file motions in the state court, challenge procedural irregularities on

---

[5] Plaintiff was sentenced on convictions in three different cases on August 17, 2026. As explained, because those convictions are not final on direct review as of the date of this decision, the proceedings are deemed ongoing for purposes of *Younger*.

appeal, or challenge certain evidence in the state court).

With all three factors met and no extraordinary circumstances evident,[6] the Undersigned **RECOMMENDS** that the Court abstain and **DISMISS without prejudice** Plaintiff's claims relating to the criminal prosecutions against him.

**D. Remaining Claims**

Plaintiff's remaining claims, *i.e.*, those unrelated to challenging his convictions and against Defendants who are not immune, should be dismissed for failure to state a claim.

First, Plaintiff names as a Defendant Alyssa Dolly of the S.E. Ohio Crimes Task Force. (ECF No. 13, at 264). But his Complaint contains no allegations against her. To state a claim for relief under § 1983, Plaintiff must allege that each defendant had "personal involvement" in the deprivation of his rights. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008) (citation omitted). Here, Plaintiff does not connection personally Dolly to any of the allegations in his Complaint. For that reason, the Undersigned **RECOMMENDS** that any claims against Defendant Dolly be **DISMISSED without prejudice**.

As to the remaining Defendants, to prevail on a cause of action under § 1983, a plaintiff must prove: (1) deprivation of a right secured by the Constitution or laws of the United States that was (2) caused by a person acting under the color of state law. *Jones v. Muskegon Cnty.*, 625 F.3d 935, 941 (6th Cir. 2010) (citations omitted). And in order to survive a dismissal for failure to state a claim, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that his plausible on its face. *Hill v. Lappin*, 630 F.3d at 471 (holding that the

[6] Although the Sixth Circuit has recognized the pursuit of a speedy trial as one of the exceptions to the *Younger* abstention doctrine, *Rucker*, 2018 WL 348101, at *5 (citations omitted), Plaintiff here has already been tried, convicted, and sentenced. Any speedy trial claims must thus be raised on direct appeal and do not provide a basis at this stage of Plaintiff's criminal cases for intervention by this Court.

dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals under § 1915(e)(2)(B)). Although courts are generally required to construe *pro se* complaints liberally, "[l]iberal construction does not require a court to conjure allegations on a litigant's behalf," *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004), or to "guess at the nature" of the claims asserted, *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

Plaintiff states that his cell phone was confiscated by Defendant Deputy Sheriff Ashley Wallace on July 25, 2025, following Plaintiff's arrest on felonious assault charges. "The Fourth Amendment prohibits unreasonable seizures of personal property, *see Farm Lab. Org. Comm. v. Ohio State Highway Patrol*, 308 F.3d 523, 543 (6th Cir. 2022), but it is not 'unreasonable' within the meaning of the Fourth Amendment for police to seize items in the possession of a person being arrested, *see United States v. Cunningham*, 520 F. App'x 413, 416 (6th Cir. 2013)." *Black v. City of Royal Oak*, No. 23-12371, 2024 WL 4220711, at *10 (E.D. Mich. Sept. 17, 2024). Officers may seize items within an arrestee's immediate proximity if incident to a lawful arrest. *See Davis v. Robbs*, 794 F.2d 1129, 1131 (6th Cir. 1986); *Foster v. Paralexis*, No. 2:18-11290, 2020 WL 4722426, at *14–15 (E.D. Mich. Mar. 23, 2020). It is reasonable to infer from Plaintiff's allegations that he was in possession of his cell phone when he was arrested. That being so, Wallace's seizure of Plaintiff's phone was incident to his arrest and therefore did not violate of the Fourth Amendment. The Undersigned **RECOMMENDS** that Plaintiff's claim against Defendant Wallace be **DISMISSED without prejudice** for failure to state a claim.

Plaintiff states that on September 4, 2025, Probate Judge Timothy Williams (not named as a Defendant) and Defendant Deputy Sheriff Pugh drafted a warrant for the contents of Plaintiff's phone to be collected within three days; Plaintiff then suggests without elaboration

that something was amiss with the warrant or the way the warrant was executed. (ECF No. 13, at 256–57). These allegations are too conclusory to state any claim for relief. Plaintiff does not explain what misconduct Pugh committed or how it deprived Plaintiff of any constitutional rights. As noted above, a complaint must contain sufficient factual matter to state claim to relief that his plausible on its face, *Hill*, 630 F.3d at 471, and must not leave a court to guess at the claim being alleged. *Wells*, 891 F.2d at 594. The Undersigned thus **RECOMMENDS** that Plaintiff's claims against Defendant Pugh be **DISMISSED without prejudice** for failure to state a claim.

Plaintiff alleges that Defendant Deputy Gerber left Plaintiff unattended with his wife (the victim in one of the criminal cases who had a protective order) and that this constitutes a malicious act by the prosecutors in retaliation for Plaintiff seeking to proceed *pro se*. (ECF No. 13, at 251–52). These allegations do not plausibly support an inference that Gerber (or the prosecutors, even if they were not immune from liability) committed misconduct that deprived Plaintiff of a constitutional right. Similarly, the only allegations against Defendants Skidmore, Timberman, and Martin are that they executed or contributed to affidavits accusing Plaintiff of violations of the protective order against his wife—one stemming from Plaintiff's contact with the victim during the court appearance referenced above, and the other stemming from Plaintiff's communication with the victim from the jail on November 26, 2025. (ECF No. 13, at 252-53). Again, these conclusory allegations do not plausibly support an inference that Skidmore, Timberman, or Martin committed misconduct that deprived Plaintiff of a constitutional right. The Undersigned thus **RECOMMENDS** that Plaintiff's claims against Defendants Pugh, Skidmore, Timberman, and Martin be **DISMISSED without prejudice** for failure to state a claim.

On a final note, Plaintiff fails to articulate what relief he seeks. Rule 8(a)(3) of the Federal Rules of Civil Procedure provides that, to state a claim for relief, a complaint must contain "a demand for the relief sought, which may include relief in the alternative or different types of relief." Fed. R. Civ. P. 8(a)(3). Plaintiff's Complaint, construed liberally, presents no discernable relief sought. Notwithstanding the Undersigned's foregoing analysis, Plaintiff's Complaint is subject to dismissal on this ground alone. *See Davis v. Village of Greenfield*, No. 1:25-cv-476, 2025 WL 2880238, at *4 (S.D. Ohio Oct. 9, 2025) ("District Courts within the Sixth Circuit and Courts in other Circuits have held that a plaintiff's failure to demand any form of relief and thus comport with Rule 8(a)(3), even when proceeding *pro se*, justifies dismissal of the complaint without prejudice under Fed. R. Civ. P. 12(b)(6).") (collecting cases), *vacated on other grounds*, 2026 WL 1215338 (S.D. Ohio May 4, 2026); *cf. Andrus v. Kunz*, No. 1:24-cv-572, 2025 WL 2605805, at *7 (S.D. Ohio Sept. 9, 2025) (stating that, at the pleading stage, Fed. R. Civ. P. 8(a)(3) requires a plaintiff to state the demand and type of relief requested).

**IV. Motion to Dismiss**

On April 13, 2026, Plaintiff filed a Motion to Dismiss, apparently seeking dismissal of the state-court indictments (now convictions) against him. (ECF No. 10). As discussed more fully above, the *Younger* doctrine requires federal courts to refrain from interfering in pending state court proceedings unless extraordinary circumstances exist. *Leveye*, 73 F. App'x at 794 (6th Cir. 2003) (citing *Younger*, 401 U.S. at 44–45). And challenges to the validity of an inmate's confinement are not properly raised under § 1983 but are instead the sole province of habeas corpus after exhaustion of state court remedies. *See, e.g., Muhammad v. Close*, 540 U.S. 749, 750 (2004). Plaintiff's request for release and/or dismissal of the charges against him is not

properly raised in this § 1983 action and the Undersigned thus **RECOMMENDS** that his motion to dismiss (ECF No. 10) **be DENIED**.

## V. Conclusion

The Undersigned concludes that Plaintiff's complaint should **be dismissed** in its entirety and that his motion to dismiss (ECF No. 10) **be denied**.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The instant complaint be **DISMISSED** for failure to state any claims upon which relief can be granted.

2. Plaintiff's Motion to Dismiss (ECF No. 10) be **DENIED**.

3. The Court **CERTIFY** under 28 U.S.C. § 1915(a)(3) that, for the foregoing reasons, an appeal of any Order adopting this Report and Recommendations would not be taken in good faith, and that the Court should therefore **DENY** Plaintiff leave to appeal *in forma pauperis*. *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

**PROCEDURE ON OBJECTIONS**

Pursuant to Fed. R. Crim. P. 72(b), **WITHIN 14 DAYS** after being served a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS**

after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019); *s*ee *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**IT IS SO RECOMMENDED.**

September 23, 2026

*s/ Courter M. Shimeall*
S. COURTER M. SHIMEALL
United States Magistrate Judge